UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ENID WEBER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 01-862 (RJL)** |
| | ) | |
| ROBERT J. BATTISTA, Chairman | ) | |
| of the National Labor Relations | ) | |
| Board, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION
(March **30**, 2009) [#92]

Enid Weber (Weber, plaintiff), a Hispanic woman, worked for the National Labor Relations Board (the Board) from 1971 until she retired in 2006.[1]  Starting in 1989, she worked as Associate Executive Secretary to the Chairman.  In 1997 Weber sought informal counseling with the Board's equal-employment office, alleging that the Board discriminated against her in numerous ways based on sex and national origin and that it retaliated against her after she complained.  After the equal-employment office did not issue a final decision within the required time, Weber filed a complaint with this Court

---

[1]For a more detailed account of the background and facts in the instant case, see *Weber v. Battista*, 494 F.3d 179, 181–186 (D.C. Cir. 2007); *Weber v. Battista*, No. 01-cv-862, 2005 WL 4908965, *1–3 (D.D.C. Mar. 17, 2005); and *Weber v. Hurtgen*, 297 F. Supp. 2d 58, 60–62 (D.D.C. 2003).

alleging various acts of discrimination.[2] In 2003 this Court granted summary judgment in

favor of the Board. *Weber v. Hurtgen*, 297 F. Supp. 2d 58, 62 & 69 (D.D.C. 2003);

*Weber v. Battista*, 2005 WL 4908965, *1–3 (D.D.C. Mar. 17, 2005). The Court of

Appeals in 2005 affirmed in part and remanded to this Court to determine two issues: (1)

whether the Board was motivated by improper considerations of gender, national origin,

or retaliation in twice failing to give Weber a performance award, and (2) whether the

Board's failure to hire her for a Senior Executive Service (SES) position as Deputy

Executive Secretary was motivated by improper considerations of gender, national origin,

or retaliation. For the following reasons, the Court concludes, viewing the facts in a light

most favorable to the plaintiff,[3] that the Board did not discriminate, or retaliate, against

Weber. Therefore, the Court GRANTS the Board's motion for summary judgment.

## BACKGROUND

Weber asserts that the Board's failure to grant her monetary performance awards

was based on her performance evaluations and that her performance evaluations were

based on improper considerations of gender, national origin, and retaliation. As the Court

of Appeals has already concluded, it was Weber's performance evaluations that resulted

---

[2]The previously named defendant, Peter Hurtgen, served as Chairman of the Board of the NLRB from May 2001 until July 2002. The Court has substituted Hurtgen with the current Chairman, Robert J. Battista. *See* Fed. R. Civ. P. 25(d)(1) (providing a public officer's successor is "automatically substituted as a party" when his or her predecessor "ceases to hold office").

[3]*McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, 580 F. Supp. 2d 99, 104, (D.D.C. 2008).

in her failure to receive performance awards. *See Weber v. Battista*, 494 F.3d 179, 185
(D.C. Cir. 2007) (noting "a reasonable jury [could] conclude that the Board gave
performance awards upon the basis of each of the employee's rating of record in his or
her annual performance evaluation").

In the years preceeding Weber's filing a complaint with the Board's equal-
employment office in August 1997, she had been evaluated at the "Outstanding" level and
received monetary performance awards. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5–6.)
Two weeks after she filed her complaint, however, her immediate supervisor evaluated
her at a lower level, and noted she lacked judgment and interpersonal skills. (*Id.* at 6–7.)
The then-Chairman disagreed with the evaluation and returned Weber's evaluation level
to "Outstanding." That Chairman, however, left the Board before Weber's next annual
evaluation. (*Id.* at 7.) Indeed, in the 1997–98 and the 1998–99 evaluations, Weber's
performance was not rated at the "Outstanding" level. (*Id.*) As such, she did not receive
performance awards in those years. (*Id.*)

Moreover, with regard to the SES position for which Weber was not hired in 1999,
the Board initially assigned Lester A. Heltzer (Heltzer) to the position of Acting Deputy
Executive Secretary. (*Id.* at 9.) Heltzer was laterally transferred from another Senior
Executive Service position, Deputy Chief Counsel. Indeed, he had served in a number of
other high-ranking positions with the Board and had worked with various Board
members. In addition, he had received a Presidential Meritorious Rank Award, one of the

highest awards given to those in the Senior Executive Service. (Ex. 21, ¶ 7.) Ultimately, the Board hired a non-SES member to replace Heltzer as Deputy Chief Counsel and, in August 1999, appointed Heltzer as the permanent Deputy Executive Secretary.

## LEGAL STANDARDS

This Court will grant a summary judgment motion if the pleadings and record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Board, as the moving party, has the burden of establishing there is not a genuine issue of material fact. *McFadden*, 580 F. Supp. 2d at 104 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Although the Court views the facts in the light most favorable to Weber, she must set out specific facts and may not rely merely on allegations, conclusory statements, or denials in her pleadings. *See id.*

Title VII of the Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Court of Appeals recently clarified that "[t]his statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493

(D.C. Cir. 2008). Weber contends she suffered adverse employment actions when the Board did not hire her as Deputy Executive Secretary and when the Board decreased her performance-evaluation level and failed to give her performance awards. In both instances, however, the Board provided legitimate nondiscriminatory reasons for its decisions. Thus, this Court must address whether Weber "produced sufficient evidence for a reasonable jury to find that [the Board's] asserted non-discriminatory reason was not the actual reason and that the [Board] intentionally discriminated against [her] on the basis of" sex or national origin. *Brady*, 520 F.3d at 494. Unfortunately for Weber, she did not.

## ANALYSIS

### A.   Performance Awards

First, with respect to the Board's decision on two subsequent occasions not to award Weber a performance award, the Board asserts it did so because it evaluated Weber below the "Outstanding" level after 1997 as a result of problems with her interpersonal skills. Weber's evaluator and supervisor, John J. Toner, explained in his 1997–98 evaluation of her that notwithstanding having cautioned her the previous year about her lack of interpersonal skills, her performance had "deteriorated . . . dramatically." (Def.'s Ex. 8.) Toner even noted that an informal complaint had been filed by one employee against Weber because she had acted so unprofessionally and lacked organizational skills. Indeed, Toner specifically referenced a memo he had written to Weber explaining her

"appall[ing] . . . lack of judgment and sensitivity" in communicating with a support-staff member. *Id.*

In opposing the summary judgment motion, Weber not only fails to address these interpersonal-communication issues individually, but does not even contend that they are unwarranted.  Instead, Weber relies on so-called timing evidence, contending merely that her performance level decreased after she complained to the equal-employment office. While evidence of suspicious timing can give rise to an inference of retaliation, the Board here has rebutted the inference by explaining Weber's evaluation decreased as a result of her lack of interpersonal skills on specific occasions.  *See Bush v. Engleman*, 266 F. Supp. 2d 97, 103 (D.D.C. 2003) (noting that although "the timing of [a] defendant's decision might support an inference of causation," this inference can be rebutted if the defendant presents evidence of a legitimate nondiscriminatory reason that the plaintiff is unable to counter).  Accordingly it is incumbent upon Weber to come forward with some evidence to rebut these nondiscriminatory explanations.  She has not!  While Weber's evaluation level decreased after she alleged discrimination, her level also decreased after she exhibited problems communicating in a professional manner.  In short, the evidence supports the Board's legitimate nondiscriminatory reasons for the evaluations.  Thus, this Court finds the Board did not intentionally discriminate against Weber in its 1997–98 and 1998–99 performance evaluations, or in failing to grant her performance awards on the basis of those evaluations.

### B.      Failure to Promote

With respect to Weber's complaint about her not receiving a promotion, the Board

also offers legitimate nondiscriminatory reasons for selecting someone else as Deputy

Executive Secretary.  First, the Board explained that Weber was not hired because it

believed Heltzer was better qualified.  (Def. Ex. 1, Answer 23 and Ex. 19, Aff. 1.)

Indeed, the Board's Chairman stated he believed Heltzer's "extensive knowledge of the

substantive caselaw would be a valuable asset" in reducing the Board's backlog.  (Def.

Ex. 1, Answer 24.)  Additionally, Heltzer was already in the Senior Executive Service,

and as a result could be transferred laterally to the Deputy Executive Secretary position

without permanently encumbering an additional Senior Executive Service slot, of which

the Board was in short supply.

Weber attempts to show the Board's proffered legitimate nondiscriminatory

reasons are mere pretexts for discrimination in three ways.  First, she argues that

notwithstanding Heltzer's qualifications, she was more qualified than Heltzer by

comparing their case-processing speeds.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

21–26.)  However, the comparison of their processing speeds fails to establish Weber as

*more* qualified than Heltzer for two reasons.  First, the comparison presumes Heltzer and

Weber had the same job description during the time period they were processing cases.

Unfortunately for Weber, the evidence does not support this presumption.  Indeed,

Heltzer had additional responsibilities, such as supervising staff members and processing

various other types of cases. (Ex. 21 at ¶ 9.) Additionally, the Board's stated reason for

selecting Heltzer was not narrowly limited to his case-processing speed.

Furthermore, Weber's reliance on *Aka v. Washington Hospital Center*, 156 F.3d

1284, 1300 (D.C. Cir. 1998) (en banc), is misplaced because it is factually distinct from

this case. In *Aka*, our Circuit Court reversed a grant of the employer's summary judgment

motion because the plaintiff provided objective evidence that he was "markedly more

qualified" than the hired individual. *Id.* at 1299. Besides a master's degree in the field,

the plaintiff had nineteen years of relevant experience, compared with less than the two

months for the hired individual. *Id.* at 1296. Here, however, Weber has not demonstrated

that she is "markedly more qualified" than Heltzer. *Cf. id.* at 1299.

Moreover, our Circuit Court in *Aka* concluded that the plaintiff had proven his

employer's supposed legitimate nondiscriminatory reason was, in fact, false, and that a

reasonable jury could infer discrimination based on this evidence. *Id.* at 1296. To say the

least, Weber has not raised a material issue of fact regarding her pretext argument, let

alone demonstrated that the Board's stated reason for hiring Heltzer, his qualifications, is

pretextual. *Cf. id.* at 1299.

The second way Weber attempts to establish a pretext is with an argument that the

Board's actual reason for not hiring her could *not* have been to avoid encumbering a

Senior Executive Service slot. She points out that the Board filled Heltzer's former

position with a non-Senior Executive Service member and thus encumbered the same

number of Senior Executive Service positions as it would have if it had hired Weber for

the Deputy Executive Secretary position.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

26–27.)  Weber argues this evidence indicates that the Board was not concerned with

having too many positions filled with Senior Executive Service members.  However,

Weber does not address additional benefits to the Board from laterally transferring

Heltzer.  By filling the Deputy Executive Secretary position with a Senior Executive

Service member, the Board was able to fill the position quickly and have flexibility in

hiring for Heltzer's former position.  Thus, the Board had a legitimate, nondiscriminatory

reason to prefer hiring a Senior Executive Service member.  *See Brady*, 520 F.3d at

496–97 (affirming a grant of summary judgment in favor of an employer after the

employee failed to establish the employer's legitimate nondiscriminatory reason was false

and did not offer any other evidence of unlawful discrimination).

    Finally, Weber argues the Board's failure to competitively post the Deputy

Executive Secretary position is indicative of unlawful discrimination in light of the

Chairman's "ma[king] a special point of competing all [Senior Executive Service]

positions during his chairmanship as a matter of Policy."  (Pl's. Opp. to Def.'s Mot. for

Summ. J. at 27.)  While a variation from an established procedure can evince pretext, *see*

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 145 (2000), it does not here.

The Board did not depart from established policies.  Indeed, established policy allowed

the Board to fill Senior Executive Service positions either by competitively posting them

or by reassigning a current or former career Senior Executive Service employee. (*See* Ct. Doc. 92 Ex. 5, Responses 4–6.)  In fact, the Board had used both methods in the past. (*See* Def. Ex. 11, Truesdale Affidavit at 2.)  While the Chairman previously reversed a hiring decision made absent a competitive posting, his reversal was not due to a failure to post it competitively, but because the General Counsel's advice had not been solicited. Therefore, the Board's failure to competitively post the Deputy Executive Secretary position does not necessarily evince a discriminatory intention on the part of the Board.

## CONCLUSION

Thus, for all of the above reasons, Weber has failed to establish the Board's proffered legitimate nondiscriminatory reason is pretextual and has offered no additional evidence of discrimination.  Therefore, this Court grants the Board's motion for summary judgment. *See Brady*, 520 F.3d at 493.  An Order consistent with the foregoing accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge